UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| OLANDER ENTERPRISES, INC.,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>SPENCER GIFTS, LLC, SPENCER GIFTS HOLDING, INC., SPENCER GIFTS ONLINE, LLC, TRI-COASTAL DESIGN GROUP, INC., SILVER MOON CREATIONS, INC., HIP HOP WHOLESALE, ICED OUT GEAR, WORLDWIDE DYNASTY, INC. and DOES 1 through 10,<br><br>　　　　Defendants. | Case No.: SACV 09-01372-CJC(ANx)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**INTRODUCTION**

　　Plaintiff Olander Enterprises, Inc. ("Olander") brings this copyright and trademark infringement action against Defendants Spencer Gifts, LLC, Spencer Gifts Holding, Inc., Spencer Gifts Online, LLC (collectively "Spencer Gifts"), Silver Moon Creations, Inc. ("Silver Moon"), Tri-Coastal Design Group, Inc. ("Tri-Coastal"), and Worldwide Dynasty, Inc., Hip Hop Wholesale, Iced Out Gear (collectively "Worldwide").  Olander

1  manufactures and sells designer belt buckles, belts and jewelry. Olander alleges that it
2  owns four copyright registrations for its belt buckle and belt designs, each of which
3  protects multiple belt buckle designs depicted in a catalog deposited with the Register of
4  Copyrights. (Third Am. Compl. ¶¶ 13–16; *id.* Exs. 1–4.) Olander alleges that Spencer
5  Gifts, Silver Moon, Tri-Coastal and Worldwide are infringing its four registered
6  copyrights by manufacturing and selling belt buckles that are unauthorized copies of
7  approximately twenty of Olander's belt buckle designs. Worldwide and Spencer Gifts
8  and Silver Moon now move for partial summary judgment and summary judgment,
9  respectively, with respect to Olander's copyright infringement claims on the ground that
10 each of Olander's four registrations are invalid because Olander did not satisfy the
11 regulatory requirements for registering multiple belt buckles as a "single work." Olander
12 also moves for partial summary judgment regarding the validity of its four copyright
13 registrations, on the issue of whether Olander has standing to bring its copyright
14 infringement claims. Because the undisputed evidence shows that Olander did not first
15 publish the belt buckles it claims are protected by its four registrations in "a single unit of
16 publication," as required for a valid "single work" registration, Worldwide's motion for
17 partial summary judgment and Spencer Gifts' and Silver Moon's motion for summary
18 judgment are GRANTED. Olander's cross-motion for partial summary judgment is
19 DENIED as moot.

21 **BACKGROUND**

23    Olander owns four copyright registrations that are at issue in this case: (1)
24 Registration No. VA 1-260-157 ("the '157 registration"), (Curtis Decl. Ex. 1), (2)
25 Registration No. VAu 671-816 ("the '816 registration"), (Curtis Decl. Ex. 3), (3)
26 Registration No. VA 1-389-368 ("the '368 registration"), (Curtis Decl. Ex. 5), and (4),
27 Registration No. VA 1-733-543 ("the '543 registration"), (Curtis Decl. Ex. 7). (Third
28 Am. Compl. ¶¶ 13–16; *id.* Exs. 1–4.) Each registration purportedly protects a collection

of belt buckles, belts and jewelry that are depicted in a catalog deposited with the Register of Copyrights.  (*See* Curtis Decl. Exs. 2, 4, 6, 8.)  Specifically, Olander claims that the '157 registration protects the following belt buckle designs, among others: the Winged Heart, the (Double) Turntable, the Praying Hands, and the Crown.  (Def.'s Statement of Undisputed Facts ("SUF") ¶ 5; Third Am. Compl. ¶ 13.)  The '157 registration, which was issued on February 17, 2004, states that the "silver star belt buckle collection" was first published as a collection on January 15, 2004.  (Def.'s SUF ¶ 3; Pl.'s Statement of Disputed Facts ("SDF") ¶ 1; Curtis Decl. Ex. 1.)  Olander's sales records show that the Crown belt buckle was first sold as early as June 17, 2003 and was sold throughout the rest of 2003.  (Curtis Decl. Conf. Ex. 14 at 141–45.)  The (Double) Turntable belt buckle was first sold as early as November 17, 2003, and was sold throughout the rest of 2003.  (Curtis Decl. Conf. Ex. 22 at 247–48.)  In contrast, the Praying Hands belt buckle and products featuring the Winged Heart belt buckle design were not first sold until January 20, 2004.  (Curtis Decl. Conf. Ex. 20 at 220; Metzger Decl. Conf. Ex. C.)

Olander claims that the '816 registration protects the following belt buckle designs, among others: the Lightning Bolt, the Mini Glok, the Broken Heart Gun, the Big Gun, the Turntable [Single], and the Flaming Skull.  (Def.'s SUF ¶ 10; Third Am. Compl. ¶ 14.)  The '816 registration, which was issued on January 18, 2006, describes the "updated catalog for 2006" but does not give a date of first publication.  (*See* Curtis Decl. Ex. 3 § 3(b).)  Olander's sales records show that the Mini Glok belt buckle was first sold as early as June 20, 2005 and was sold throughout the rest of 2005, (Curtis Decl. Conf. Ex. 17 at 175), that products using the Big Gun design were first sold as early as July 8, 2005 and were sold throughout the rest of 2005, (*id.* at 175–76), that the Broken Heart Gun belt buckle was sold as early as September 8, 2005 and was sold throughout 2005, (Metzger Decl. Conf. Ex. E), that the Flaming Skull was sold as early as February 28, 2005 and was sold throughout the rest of 2005, (Curtis Decl. Conf. Ex. 16 at 172), and that the

Turntable [Single] belt buckle design was sold as early as June 10, 2005 and was sold throughout the rest of 2005, (Curtis Decl. Conf. Ex. 23 at 282).

Olander claims that the '368 registration protects the following designs, among others: the Winged Bomb, the Dagger Heart, the Winged Shield, the Trust No One, the Day of the Dead, the Turntable, and the Multiskull. (Def.'s SUF ¶ 15; Third Am. Compl. ¶ 15.)  The '368 registration, which was issued on August 4, 2006, states that the collection of designs of belts and belt buckles was first published as a collection on July 1, 2006.  (Def.'s SUF ¶ 13; Pl.'s SDF ¶ 2; Curtis Decl. Ex. 5.)  Olander's sales records show that the Winged Bomb belt buckle was first sold as early as February 10, 2006 and was sold throughout 2006, (Metzger Decl. Conf. Ex. B), the Dagger Heart belt buckle was first sold as early as March 2, 2005 and was sold throughout 2005 and 2006, (Metzger Decl. Conf. Ex. D), the Day of the Dead belt was first sold as early as April 25, 2006, (Curtis Decl. Conf. Ex. 15 at 170), the (Double) Turntable was first sold as early as November 17, 2003, and was sold throughout the rest of 2003, (Curtis Decl. Conf. Ex. 22 at 247–48), and the Multiskull belt was sold as early as June 12, 2006 and was sold throughout the rest of 2006, (Curtis Decl. Conf. Ex. 19 at 217).  In contrast, the Trust No One belt was not first sold until August 9, 2006.  (Curtis Decl. Conf. Ex. 21 at 237.)

Olander claims that the '543 registration protects the following designs, among others: the Bite Me Fangs, the Brass Knuckle Guns, the Razorblade and the Royal Crown.  (Def.'s SUF ¶ 19; Pl.'s SDF ¶ 4; Third Am. Compl. ¶ 16.)  The '543 registration, which was issued on August 16, 2010 for a collection titled "Olander Enterprises Presents Rock Rebel (2009)," states that the collection was first published as a catalog on March 1, 2009.  (Def.'s SUF ¶ 18; Pl.'s SDF ¶ 3; Curtis Decl. Ex. 7.)  Olander's sales records show that products using the Brass Knuckle Guns designs were first sold as early as July 25, 2007, and that they were continually sold throughout 2007 and 2008.  (Metzger Decl.

Conf. Ex. F.)  The Royal Crown belt buckle design was first sold as early as July 13, 2006, and was continually sold throughout 2006 and 2007.  (Metzger Decl. Conf. Ex. G.)

Olander alleges that Spencer Gifts purchased Olander's Blackout buckle design in or around 2005, but did not purchase or license any other belt buckle designs.  (Third Am. Compl. ¶¶ 21–22.)  Nevertheless, Olander alleges that Spencer Gifts began selling the Winged Heart design and the Turntable design that are covered by the '157 registration, the Broken Heart gun design that is covered by the '816 registration, the Winged Bomb and the Dagger Heart designs that are covered by the '368 registration, and the Royal Crown, Bite Me Fangs, and Brass Knuckle Guns designs that are covered by the '543 registration.  (*Id.* ¶¶ 28–34.)  Olander alleges that Worldwide and its fictitious business names Hip Hop Wholesale and Iced Out Gear manufacture and sell unauthorized copies of Olander's belt buckle designs to third parties, including Spencer Gifts.  Specifically, Olander alleges that Worldwide copied 14 of its belt buckle designs covered by the four registrations, including the Crown, the (Double) Turntable, and the Praying hands, which are covered by the '157 registration, the Lightning Bolt, the Flaming Skull, the Big Gun, the Single Turntable and the Mini Glok, which are covered by the '816 registration, the Winged Shield, the Trust No One, the Day of the Dead, and the Multiskull, which are covered by the '368 registration, and the Bite Me Fangs and the Razorblade, which are covered by the '543 registration.  (*Id.* ¶¶ 38–39.)  Olander alleges that Silver Moon manufactures and supplies unauthorized copies of the Winged Heart belt buckle design protected under the '157 registration, which are sold by Spencer Gifts.  (*Id.* ¶ 25.)  Olander alleges that Tri-Coastal manufactures unauthorized copies the Winged Bomb and the Dagger Heart designs protected by the '368 registration, which are also sold by Spencer Gifts in its retail stores.  (*Id.* ¶¶ 24, 35.)

Olander alleges that it learned that Spencer Gifts was selling unauthorized copies of some of Olander's belt buckle designs in Spencer Gifts' retail stores in Orange

County, California in the summer of 2009. (*Id.* ¶ 28.) After Spencer Gifts refused to respond to the cease and desist letter that Olander sent on July 23, 2009, (*id.* ¶ 29), Olander filed the instant action on November 24, 2009, asserting federal claims for copyright infringement and contributory copyright infringement against Spencer Gifts, Silver Moon, Tri-Coastal and Worldwide. Olander alleges that it subsequently discovered that Spencer Gifts was selling unauthorized copies of additional Olander designs, (*id.* ¶¶ 32–33), and amended its complaint accordingly.

**LEGAL STANDARD**

Summary judgment is proper if the evidence before the Court "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating either that there are no genuine material issues or that the opposing party lacks sufficient evidence to carry its burden of persuasion at trial. *Celotex Corp.*, 477 U.S. at 325; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Once this burden has been met, the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## ANALYSIS

In order to establish a claim for copyright infringement, Olander must prove that it owns a valid copyright registration that protects the belt buckle designs that Worldwide, Spencer Gifts, Tri-Coastal and Silver Moon are allegedly copying.[1] *See* 17 U.S.C. §§ 411(a), 412 (2006); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1241 (2010) (holding that although Copyright Act's registration requirement is a precondition to filing a copyright infringement claim it does not restrict a federal court's subject matter jurisdiction); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003) (explaining that ownership of valid copyright registration is a threshold question but finding that claimant's failure to disclose the preexisting components in its copyright application did not invalidate the copyright registration absent a showing of intent to defraud). To show that its copyright registrations are valid, Olander must show that it has satisfied the requirements for registration set forth in the federal regulations promulgated by the Register of Copyrights ("the Register"). The Copyright Act expressly authorizes the Register to prescribe by regulation the conditions and procedures for the registration of copyrights and the applications for registration. *See* 17 U.S.C. §§ 408(c)(1), 409 (2006). According to the registration regulations, typically a copyright claimant must file a separate application to obtain a separate registration for each creative work for which the claimant seeks protection. *See* 37 C.F.R. § 202.3(a)(2)(i) (2010); *see also Compendium II: Compendium of Copyright Office Practices* § 607 (1984).

---

[1] In its own cross-motion for summary judgment, Olander characterizes the issue before the Court as whether or not Olander has standing to sue for copyright infringement. *See* 17 U.S.C. § 411(a); (Pl.'s Reply to Def. Worldwide's Opp'n at 1–2). The Ninth Circuit has held that the Copyright Office's receipt of a complete application is sufficient to satisfy the statutory "standing" requirement set forth in 17 U.S.C. § 411(a), *Cosmetic Ideas, Inc. v. IAC/Interactive Corp.*, 606 F.3d 612, 619(9th Cir.), *cert. denied*, 131 S. Ct. 686 (2010), so arguably Olander has satisfied the § 411(a) "standing" requirement by applying for and obtaining the four registrations, irrespective of whether or not they are valid. *See id*. at 615–16. However, because the Court concludes that Olander cannot prove that it owns a *valid* copyright registration, which is a required element of Olander's claims for copyright infringement, *see id.* at 615, the Court need not decide whether Olander has standing to assert its copyright infringement claims in the first place. Accordingly, Olander's motion for partial summary judgment is DENIED as moot.

1  However, a claimant may register multiple works through a single application by
2  satisfying the regulatory requirements for either a "group registration," *see* 37 C.F.R. §
3  202.3(b)(5)–(11), or a "single work" registration for a group of published or unpublished
4  works, *see id.* § 202.3(b)(4). A work is "published" for purposes of the Copyright Act
5  when copies of the work are distributed to the public "by sale or other transfer of
6  ownership, or by rental, lease or lending" or offered to be distributed "to a group of
7  persons for purposes of further distribution." 17 U.S.C. § 101. Since belt buckles are
8  not covered by any of the categories of works that may be covered by "group
9  registration," *see* 37 C.F.R. § 202.3(b)(5)–(1), and Olander asserts that each of its four
10 copyright registrations protects a group or "line" of belt buckles that were published in
11 catalogs, (Third Am. Compl. Exs. 1–4), Olander must show that its registrations satisfy
12 the regulatory requirements for "single work" registration for a group of published
13 works.[2]

15 A claimant may obtain a "single work" registration for a group of published works
16 if "all copyrightable elements … are otherwise recognizable as self-contained works," the
17 works "are included in a single unit of publication," and "the copyright claimant is the
18 same" for all of the works. 37 C.F.R. § 202.3(b)(4)(A). The parties do not dispute that
19 the belt buckles at issue "are otherwise recognizable as self-contained works" or that
20 Olander is the copyright claimant for all of the belt buckles. (*See* Def. Worldwide's
21 Mem. P. & A. Supp. Mot. Partial Summ. J. at 6.) Instead, the dispute turns on the

---

[2] A group registration is only available for specific categories of works, including automated databases, related serials or periodicals, daily newspapers, contributions to periodicals, daily newsletters, published photographs. *See* 37 C.F.R. § 202.3(b)(5)–(10). The parties agree that belt buckle designs, which are described in the registrations as two-dimensional artwork and three-dimensional sculptures, are not covered by any of these categories. (*See* Pl.'s Mem. P. & A. Opp'n Def. Worldwide's Mot. Partial Summ. J. at 9.) In addition, although Olander's application for the '816 registration does not indicate a date of first publication, it is undisputed that Olander sold or "published" many of the belt buckles its claims were part of the collection submitted in connection with the '816 registration, (Curtis Decl. Conf. Exs. 16, 17, 23), and thus the '816 registration should be treated as a single work registration for published works rather than unpublished works.

meaning of the "single unit of publication" requirement, and specifically, whether undisputed evidence that Olander sold some of belt buckle designs individually prior to including them in the catalogs that Olander deposited with the Register in connection with each of its four registrations precludes finding that the belt buckles were "included in a single unit of publication."

The Court is persuaded that a group of published works must be first published together in order to qualify as a "single unit of publication" for purposes of a "single work" registration. Informal guidance provided by United States Copyright Office states that only those individual works "*first published* in a single unit of publication" will be covered by the single work registration. *Compendium II: Compendium of Copyright Office Practices* § 607.01 (1984) (emphasis added); *see also* U.S. Copyright Office, *Help: Type of Work*, http://www.copyright.gov/eco/help-type.html (last visited Aug. 19, 2011) ("To register multiple individual works contained in the same unit of publication with a single application, the following requirements must be met: This publication must represent first publication of all of the works included in the registration. The registration must exclude any previously published work."). There is no controlling authority directly interpreting the "single unit of publication" requirement. *See United Fabrics Int'l, Inc. v. C & J Wear, Inc.*, 630 F.3d 1255, 1259 (9th Cir. 2011) (noting that "a necessary element of a published-collection copyright is that the collection is sold, distributed or offered for sale concurrently" but that there is no such requirement for an unpublished collection). But the Ninth Circuit has held that courts should generally defer to the Register's interpretation of copyright statutes and regulations, *see Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 973 (9th Cir. 2008) (discussing Ninth Circuit precedent in which the court deferred to the Register's reliance on the Compendium of Copyright Office Practices), and the few other courts who have addressed the issue have also deferred to the interpretation offered by the United States Copyright Office. *See Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 206 n.2 (3d Cir. 2005) (noting

government's interpretation that only those individual works first published in the single work will be covered by the single work registration but remanding to district court to determine in the first instance whether that interpretation presents a barrier to plaintiff's copyright registration); *McLaren v. Chico's FAS, Inc.*, No. 10 Civ. 2481 (JSR), 2010 WL 4615772, at *2–*3 (S.D.N.Y. Nov. 9, 2010) (noting that Copyright Office's interpretation is entitled to at least some deference and concluding that "the most natural reading" of the regulation's requirement is that the works must be first published together to qualify as a single unit of publication). Moreover, the Court has not identified any other court that has rejected the interpretation that works must be first published together in order to satisfy the single unit of publication requirement.

Such an interpretation supports one of the fundamental policy goals of the Copyright Act, which is to promote a robust federal register of existing copyrights by discouraging copyright holders from sitting on their rights. To further this important objective, Congress enacted several statutory incentives in the Copyright Act of 1976 to encourage copyright holders to promptly register their works with the Copyright Office. *See* 17 U.S.C. §§ 410–12; *Cosmetic Ideas, Inc. v. IAC/Interactive Corp.*, 606 F.3d 612, 619 (9th Cir. 2010) (discussing legislative history of the 1976 Act to conclude that receipt of a complete application by the Copyright Office satisfied the Copyright Act's requirement for registration before bringing an infringement action); 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[C][1][a], 7.16[D] (rev. ed. 2011). For example, Congress limited the availability of certain remedies in infringement suits, such as statutory damages and attorneys' fees, to works that were registered prior to the commencement of the alleged infringement. 17 U.S.C. § 412. The statute further encourages prompt registration by providing that a copyright holder who registers his or her work within three months after the first publication of the work is entitled to recover statutory damages and attorneys' fees for any infringement that commenced after first publication of the work and before the effective date of its registration. *Id.* § 412(2).

Restricting the "single work" registration to groups of works that are published together for the first time as part of a single unit of publication similarly discourages copyright holders from sitting on their rights by preventing a copyright holder from selling an individual work for months or years without registering it, and then later registering it as part of a collection in order to avoid any consequences from the failure to register the work such as the unavailability of statutory damages and attorneys' fees. This case also illustrates the practical importance of an administrative rule that prevents copyright holders from surreptitiously including previously published works as part of a "single work" registration, when they should in fact be excluded. *See* U.S. Copyright Office, *Help: Type of Work*, http://www.copyright.gov/eco/help-type.html (last visited Aug. 19, 2011). Olander was able to obtain only four registrations that purport to cover some 700 belt buckle designs without specifically showing which, if any, of the belt buckles were covered by prior valid registrations or derived from works registered by Olander or other authors or copyright holders. (*See* Curtis Decl. Exs. 1–8.) Not only are the copyright examiners' abilities to catch improper inclusions among hundreds of works in a multiple work registration limited by time and resource constraints, but also those limitations are exacerbated by the *ex parte* nature of the application process, which does not provide an opportunity for another creator of a similar work to object to the inclusion of a particular work on the grounds that he or she has already created a similar work.

Under this interpretation of a "single unit of publication," not one of Olander's four copyright registrations is valid because the undisputed evidence shows that all four groups of belt buckles were not first published as a single unit of publication. In fact, Olander sold most of the specific belt buckle designs that it alleges Worldwide, Spencer Gifts, Tri-Coastal and Silver Moon copied for several months or even more than a year before they were published as part of the collections that Olander asserts are protected by its four registrations. Specifically, Olander asserts that its Crown, Double Turntable, Winged Heart and Praying Hands belt buckles are protected by the '157 registration. The

application for the '157 registration states that the silver star belt buckle collection was first published on January 15, 2004. (Curtis Decl. Ex. 1; Pl.'s Mem. P. & A. Supp. Mot. Summ. J. Ex. 1.) But the '157 application is invalid because the Crown belt buckle was sold, or "published," *see* 17 U.S.C. § 101, as early as June 2003, and the Double Turntable belt buckle was sold as early has November 2003, (Curtis Decl. Conf. Exs. 14, 22), and thus could not have been first published as part of a collection in a "single unit of publication" on January 15, 2004. The '816 registration is invalid because the Flaming Skull belt buckle was sold or "published" as early as February 2005, the Broken Heart Gun belt buckle was sold as early as May 2005, the Mini Glock and the Turntable [Single] belt buckles were sold as early as June 2005, and the Big Gun belt buckle was sold as early as July 2005, (Curtis Decl. Conf. Exs. 16, 17, 23; Metzger Decl. Conf. Ex. E), and thus these designs could not have been first published as part of a collection in a "single unit of publication." The '368 registration is invalid because the Winged Bomb belt buckle was sold or "published as early as February 2006, the Dagger Heart belt buckle was sold as early as March 2005, the Day of the Dead belt was sold as early as April 2006, and the Multiskull belt was sold as early as June 2006, (Metzger Decl. Conf. Exs. B, D; Curtis Decl. Conf. Exs. 15, 19, 22), and thus these designs could not have been first published as part of a collection in a "single unit of publication" on July 1, 2006. Finally, the '543 registration is invalid because the Brass Knuckle Guns belt buckle was sold as early as July 2007 and the Royal Crown belt buckle was sold as early as July 2006, (Metzger Decl. Conf. Exs. F, G), and thus could not have been first published as part of a collection in a "single unit of publication" on March 1, 2009.[3]

---

[3] At the hearing, Olander's counsel argued that Olander properly disclaimed its previous registrations in order to make it clear that it only sought to register the new belt buckle designs and was not attempting to re-register certain belt buckle designs or extend the life of previous registrations. (*See* Pl.'s Mot. Summ. J. Exs. 1–4; Curtis Decl. Exs. 1, 3, 5, 7.) However, none of the purported disclaimers save any of Olander's registrations because the disclaimers simply list the previous catalog registrations, which are themselves invalid, rather than identify the particular belt buckle designs that are already protected by prior copyright registrations. For example, the '816 registration disclaims the material covered in the '157 registration. (Curtis Decl. Ex. 3.) But some of the belt buckles purportedly covered by the '157 registration, such as the Crown design, cannot be protected by that registration because they were first

Because Olander cannot show that any one of its four copyright registrations protect collections of belt buckles first published in a single unit of publication as required by the "single work" registration regulations, Olander cannot prove an essential element of its copyright infringement claims—that it owns a valid copyright registration. Accordingly, Spencer Gifts, Worldwide, Silver Moon and Tri-Coastal are entitled to judgment as a matter of law with respect to Olander's copyright infringement and contributory copyright infringement claims.

**CONCLUSION**

For the foregoing reasons, Worldwide's motion for partial summary judgment and Spencer Gift's and Silver Moon's motion for summary judgment are GRANTED. Olander's motion for partial summary judgment on issue of standing is DENIED as moot.

DATED: August 25, 2011

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

sold separately in 2003, before they were published in a collection in the catalog on January 15, 2004. Olander has not offered any evidence to show that a previous *valid* copyright registration does cover the Crown belt buckle, or that the Crown belt buckle was properly disclaimed or excluded from the '157 registration. *See* U.S. Copyright Office, *Help:Type of Work*, http://www.copyright.gov/eco/help-type.html (last visited Aug. 19, 2011) (Example 2).